A93A1594. PARKER v. THE STATE.
(438 SE2d 664)

McMURRAY, Presiding Judge.

Defendant Parker was indicted for possession of lysergic acid diethylamide ("LSD") with the intent to distribute. Following the denial of his motion to suppress evidence seized during a search of his person, Parker pleaded guilty and attempted to reserve the right to appeal the denial of the motion to suppress. *Held*:

The applicable procedure by which a criminal defendant may

plead guilty but reserve issues for consideration on appeal is enunciated in *Mims v. State*, 201 Ga. App. 277, 278 (1), 279 (410 SE2d 824). In *Mims* this court held that "trial courts have the discretion to accept or reject guilty pleas (*Harris v. State*, 175 Ga. App. 134, 135 (332 SE2d 685); *Echols v. State*, 167 Ga. App. 307, 308 (306 SE2d 324)), even when the guilty plea is part of a plea bargain. *State v. Germany*, 246 Ga. 455, 456 (271 SE2d 851). Therefore, it is the responsibility of the trial court to decide whether to exercise its discretion and accept a guilty plea on condition that appellate issues are preserved. . . . [D]efendants have no right to condition guilty pleas upon reserving the appeal of any issues, and defendants *may only* reserve the appeal of such issues when the trial court, in the exercise of its discretion, allows a defendant to do so as part of a negotiated plea. Therefore, unless the trial court *expressly* approves the reservation of the issue and accepts the guilty plea with that condition, the issue is not preserved. . . ." (Emphasis supplied.) Id. at 278-279 (1).

In the case sub judice, it appears that *not until after the trial court pronounced sentence* and explained the conditions relating to defendant Parker's sentence on probation is there any mention of a reservation of defendant Parker's appeal of "a motion to suppress." This is confirmed in the following quoted portion of the "pleas and sentences" transcript: "(Standing before the Court, Kenneth Andrew Parker, [first co-defendant], and [second co-defendant].) MR. STINES [assistant district attorney]: Your Honor, the State would call co-defendants Kenneth Andrew Parker, [first co-defendant], and [second co-defendant]. THE COURT: There's three of these, and that's Kenneth Andrew Parker, [first co-defendant], and [second co-defendant]? MR. STINES: That's correct, Your Honor. MR. FOWLER [counsel for second co-defendant]: [Second co-defendant] is here, Your Honor. This is [second co-defendant]. THE COURT: Okay, each one of you raise your right hand. NOTE: (Defendants sworn in.) THE COURT: Now, each one of you understand what you're charged with in this case? [FIRST CO-DEFENDANT]: Yes, sir. [SECOND CO-DEFENDANT]: Yes, sir. [DEFENDANT] PARKER: Yes, sir. THE COURT: And you're charged with violation of the Georgia Controlled Substance Act, is that right? [SECOND CO-DEFENDANT]: Yes, sir. MR. PARKER: Yes, sir. [FIRST CO-DEFENDANT]: Yes, sir. THE COURT: Now, you've had time to talk with your lawyer about this case, each one of you? [FIRST CO-DEFENDANT]: Yes, sir. MR. PARKER: Yes, sir. [SECOND CO-DEFENDANT]: Yes, sir. THE COURT: And your lawyer is physically present with you in court at this time? [FIRST CO-DEFENDANT]: Yes, sir. [SECOND CO-DEFENDANT]: Yes, sir. MR. PARKER: Yes, sir. THE COURT: And you understand that upon your plea of guilty, you could be imprisoned for as much as 30 years? [FIRST CO-DE-

FENDANT]: Yes, sir. MR. PARKER: Yes, sir. [SECOND CO-DE-FENDANT]: Yes, sir. THE COURT: Are you able to hear and understand my statements and questions? [SECOND CO-DEFENDANT]: Yes, sir. [FIRST CO-DEFENDANT]: Yes, sir. MR. PARKER: Yes, sir. THE COURT: Are you now under the influence of alcohol, drugs or medication? [SECOND CO-DEFENDANT]: No, sir. [FIRST CO-DEFENDANT]: No, sir. MR. PARKER: No, sir. THE COURT: Do you know that you have a right to enter a plea of not guilty, be faced by your accusers, examine them, and present witnesses and other evidence in your behalf? [FIRST CO-DEFENDANT]: Yes, sir. MR. PARKER: Yes, sir. [SECOND CO-DEFENDANT]: Yes, sir. THE COURT: You understand that you have a right to plead not guilty to every charge filed against you? [FIRST CO-DEFENDANT]: Yes, sir. MR. PARKER: Yes, sir. [SECOND CO-DEFENDANT]: Yes, sir. THE COURT: And you understand that if you plead not guilty, you have the right to testify or not to testify, as you choose; that you cannot be required to testify and that if you do not testify, the Jury cannot take that as evidence against you? [FIRST CO-DEFENDANT]: Yes, sir. MR. PARKER: Yes, sir. [SECOND CO-DEFENDANT]: Yes, sir. THE COURT: Do you understand that if you plead not guilty, you would be presumed to be innocent and that before you can be convicted, the prosecution will have the duty of proving your guilt beyond a reasonable doubt? [FIRST CO-DEFENDANT]: Yes, sir. [SECOND CO-DEFENDANT]: Yes, sir. MR. PARKER: Yes, sir. THE COURT: Now, has anyone made any promises or threats to you to cause you to plead guilty? [FIRST CO-DEFENDANT]: No, sir. MR. PARKER: No, sir. [SECOND CO-DEFENDANT]: No, sir. THE COURT: You can now let them enter their plea at this time. Now, you're pleading guilty freely and voluntarily? [FIRST CO-DEFEND-ANT]: Yes, sir. MR. PARKER: Yes, sir. [SECOND CO-DEFEND-ANT]: Yes, sir. MR. STINES: Your Honor, the facts would show in this case that back on the 10th day of September, 1992, agents from the Moultrie/Colquitt County Drug Squad made a stop up at the Zippy Mart in Doerun, found three persons involved, that they had 136 hits of LSD on them. They made statements indicating that the intent was to distribute this. This happened in Colquitt County, Georgia. NOTE: (Defendants enter their pleas of guilty.) MR. STINES: Your Honor, as to case number 93-CR-34, the Defendants Kenneth Andrew Parker, [first co-defendant], and [second co-defendant], have all entered their guilty pleas by signing the place provided on the back of the indictment along with their attorneys, Mr. Fowler for [second co-defendant], Mr. Mullis for Mr. Parker, and Mr. May for [first co-defendant]. THE COURT: Okay. Now, it's the sentence of the Court that each one of you serve 10 years and I'm going to let you serve that ten years on probation, provided you pay a fine of

$3,000. And also, there will be a search clause in there that they can stop you and search you at any time, any law enforcement officer, or the probation officer at any time can bring you in for a search. They can also test you to see if you're using drugs at any time. Now, here again, on the two — not all of them are first offender, are they? MR. MULLIS: No, sir. The two young lady's [sic] are. THE COURT: Now, you heard me tell the other ones awhile ago about that first offender. You're only getting 10 years but if during that 10 year period they catch you using drugs, then they bring you into court and you get 30 years on this charge; not on the new charge but on this one here. You just go off to prison for 30 years, no trial or anything. I just adjudicate you guilty. But if during this period you don't violate the law, your record's clear, the same as if you'd never been in Court with a charge against you. Do you understand that? [FIRST CO-DEFENDANT]: Yes, I understand. [SECOND CO-DEFENDANT]: Yes, sir. THE COURT: But, like I say, if they test you and you test positive for marijuana or any other kind of drug, then you come back into Court and you go off automatically for 30 years. [SECOND CO-DEFEND-ANT]: I understand. [FIRST CO-DEFENDANT]: I understand. THE COURT: And LSD, y'all didn't get to use any of it, did you? [SECOND CO-DEFENDANT]: No, sir. THE COURT: I mean, see, that's an old drug they came out with years ago when they first started using it, it started out in California. That just destroys your brain, if you ever get — I mean, you just don't know nothing, you're just crazy the rest of the time. You don't give anybody else any trouble because you don't have sense enough to give anybody trouble with LSD. That's the way it works because I've had some around me over there that tried it and they're just crazy the rest of the time until they die, is what happens. Of course, most of them's not around now because at the time, it'll kill you, is what it'll do. You don't have to use it but one or two times and that's what it does to you. Now, you're working and doing good. Also, you've got to reimburse the county for your attorney fees. Do you understand that? [FIRST CO-DEFENDANT]: Yes, sir. MR. PARKER: Yes, sir. [SECOND CO-DE-FENDANT]: Yes, sir. MR. MULLIS: Your Honor, also, I talked to the District Attorney. This plea was contingent on reserving our right to appeal a motion to suppress we'd had earlier and I was wanting to get that on the record also. I am also going to need to get that transcript. *I don't know if I need to do a motion to you to get the transcript of that hearing.* THE COURT: *That'll be all right.* But now you're working, you're doing all right, and you need to forget about drugs. MR. MULLIS: Thank you, Your Honor. MR. FOWLER: Thank you, Your Honor. MR. MAY: Thank you, Your Honor. . . . (Plea and Sentencing Concluded.)" (Emphasis supplied.)

The question presented is: Did the trial court in stating "[t]hat'll

be all right" comply with the procedural mandate of *Mims v. State*, 201 Ga. App. 277, 278 (1), 279, supra, and "expressly [approve] the reservation of the issue and [accept] the guilty plea with that condition . . ." or was the trial court responding to defense counsel's statement "I don't know if I need to do a motion to you to get the transcript of that hearing?" This Court cannot presume from the record before us, in the case sub judice, that the trial court has made and *expressly* set forth the critical determination that it "approves the reservation of the issue and accepts the guilty plea with that condition."

Due to the ambiguity on the face of the record in the case sub judice, the trial court's judgment as to defendant Parker must be vacated, his guilty plea vacated and the case remanded to the trial court for a plea hearing at which the trial court may *clearly* exercise its discretion in accordance with *Mims v. State*, 201 Ga. App. 277, 278 (1), 279, supra. Should the trial court permit defendant Parker to enter a guilty plea "with a reservation of an appellate issue," defendant may bring an appeal submitting those issues. Otherwise, defendant must be provided a trial before a jury or the court sitting without a jury, followed by a new appeal if necessary. In any event, the trial court shall assure that an appropriate record of the proceedings be preserved for any appellate review.

*Judgment vacated and case remanded. Pope, C. J., Birdsong, P. J., Andrews, Johnson and Smith, JJ., concur. Beasley, P. J., Cooper and Blackburn, JJ., dissent.*

BEASLEY, Presiding Judge, dissenting.

I agree with my brother's dissent, which would hold that the right to appeal was preserved (Division 2) and that the State failed to show that there was probable cause to search Parker's person at the time and in the manner in which it was done.

1. Clearly, the court was indicating assent to the appeal. Defendant's counsel had made two requests, one for the right of appeal and the other for a transcript. The latter was obviously for the pursuit of appeal. The court simply assented to both requests: "That'll be all right." There would be no purpose to prompting the expense of transcript preparation if an appeal was not permitted. Moreover, it is evident beyond conjecture that both parties understood the court's affirmative assent to apply to appeal. The State makes no issue of it whatsoever. As in *Springsteen v. State*, 206 Ga. App. 150 (424 SE2d 832) (1992), we would be exalting form over substance if we concluded that the court did not expressly approve the reservation of the issue. Highly technical adherence to procedural requirements, creating a narrow window for the exertion of procedural rights (such as the right to appeal the alleged deprivation of federally protected personal

security in this case), displays a gap between law and justice.

2. Parker was searched by officer Bryant when he, along with the other two occupants, exited the vehicle as directed. The officers were all males, and apparently Parker was the only one physically searched. At least one of the two women, Weldon, was visually searched. She was the only one who had been named by the informant, who said she and one or two others, possibly Tracy (last name unknown), the owner of the vehicle, would arrive with a quantity of LSD. Parker was in the back seat, and the two women were in the front seat. Tracy Adair, who was driving and who owned the car, gave permission to search it. The evidence suggests that Parker was searched before or while the car was being searched, indicating that the reason for searching him was not that all other locations of the expected LSD had been excluded.

Officer Bryant was asked if he conducted a pat-down search of Parker's person, and he responded that he searched him, after having him place his hands on top of the vehicle, and found what he believed to be LSD in his pants pocket. There was no pat-down for weapons. Self-protection was never articulated as the purpose of the search. The informant had targeted Wendy Weldon in particular and did not suggest that someone else might have the LSD.

The question is whether there was probable cause for the police to intrude upon Parker's personal security. *Sibron v. New York*, 392 U. S. 40, 62 (IV) (88 SC 1889, 20 LE2d 917) (1968). "Before [a police officer] places a hand on the person of a citizen in search of anything, he must have constitutionally adequate, reasonable grounds for doing so." Id. at 64. As in *Sibron*, the only goal for the search was to find drugs, and there was no probable cause established for believing at the time Parker was searched that LSD was on his person "Such a search violates the guarantee of the Fourth Amendment, which protects the sanctity of the person against unreasonable intrusions on the part of all government agents." Id. at 65-66. "[A] person, by mere presence in a suspected car, [does not lose] immunities from search of his person to which he would otherwise be entitled." *United States v. Di Re*, 332 U. S. 581, 587 (68 SC 222, 92 LE2d 210) (1948). Neither the information received from the informant, nor its corroboration by the occurrence of the informant's prediction, nor what transpired as the event unfolded, gave probable cause to believe that the passenger in the back seat of the vehicle, an unnamed cooperative male, had LSD on his person.

BLACKBURN, Judge, dissenting.

The majority opinion remands this case, on the grounds that the trial court did not expressly approve Parker's reservation of the right to appeal the denial of his motion to suppress, and did not accept

Parker's guilty plea with that condition. I disagree with that conclusion, believe that we should consider the merits of this appeal, and further believe that we should reverse the trial court's denial of Parker's motion to suppress. For those reasons, I respectfully dissent.

1. As quoted by the majority itself, the record indicates that during the hearing on the guilty plea, counsel for Parker expressly reminded the trial court of the conditional nature of the guilty plea. The assistant district attorney was present and did not object to such a conditional plea (and likewise does not object on appeal), and in accepting Parker's guilty plea the trial court obviously approved that condition.

Had there been any question over the trial court's acceptance of Parker's conditional plea, it is inconceivable that both the trial court and the prosecutor would have stood silently by as Parker ineffectively attempted to reserve his right to appeal the denial of his motion to suppress. "[C]onsidering the colloquy between defense and the court in this case and the fact that the State has not objected on appeal, defendant adequately reserved the right to appeal the denial of his suppression. [Cit.]" *Starks v. State*, 204 Ga. App. 185 (419 SE2d 75) (1992); see also *Springsteen v. State*, 206 Ga. App. 150 (424 SE2d 832) (1992).

Nothing in *Mims v. State*, 201 Ga. App. 277 (410 SE2d 824) (1991) requires a trial court literally to speak out "magic" words such as "I approve the reservation of the issue and accept the guilty plea with that condition." The majority opinion imposes precisely that requirement upon trial courts.

Although the majority may object to the conditional plea allowed by *Mims*, the prosecution in this case agreed to it, and it is clear from the record and the trial court's actions that the trial court approved the reservation and accepted the conditional plea. While one might question whether or not it is wise to allow the appeal of cases where there has been a guilty plea, that is not the issue before us, and *Mims* is the law in Georgia at this time. The procedural mandate of *Mims* was followed in this case, and the remand by the majority is unnecessary and inappropriate.

2. At the hearing on Parker's motion to suppress, the arresting officer testified that around 2:30 p.m. on September 10, 1992, a reliable confidential informant gave him a tip that a red Honda containing LSD would arrive in Doerun between 4:30 to 5:00 p.m. that afternoon and would stop at the only Zippy Mart in that town. The Honda would be occupied by one individual named Wendy Weldon, another individual named Tracy, and possibly one other person. The officers did not believe they had time to apply for a search warrant, and instead proceeded to set up a stakeout of the location. Two police officers waited inside the Zippy Mart, and two officers remained in an

unmarked car and followed the red Honda to the Zippy Mart when it arrived as the informant had predicted.

The officers in the unmarked car pulled into the Zippy Mart parking lot and blocked the exit of the red Honda. Tracy Adair was the driver, and Wendy Weldon and Parker were passengers in the Honda. All three occupants were ordered to get out of the car, and Adair consented to the search of the vehicle. Parker placed his hands on the roof of the car as instructed by the officers, and one of the officers searched him, first by removing his wallet and looking in it and then by reaching into Parker's front pocket of his trousers, where over 130 "hits" of LSD were discovered. It is undisputed that Parker did not consent to this search. On appeal, Parker contends that his mere presence in the red Honda did not justify this warrantless search of his person, and I agree.

A person's mere proximity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person. *Ybarra v. Illinois*, 444 U. S. 85 (100 SC 338, 62 LE2d 238) (1979). More specifically, by one's mere presence in a suspected automobile, a person does not forfeit his immunities from searches of his person that he otherwise enjoys. *United States v. Di Re*, 332 U. S. 581 (68 SC 222, 92 LE2d 210) (1948).

OCGA § 17-5-28 authorizes an officer, during the execution of a search warrant, to detain or search any person in the place at the time in order to protect himself from attack, or to prevent the disposal or concealment of the subject matter of the warrant. That Code section pertains only to searches conducted pursuant to a warrant, and thus has no application in the instant case. *State v. Stephens*, 167 Ga. App. 707 (307 SE2d 518) (1983). Nevertheless, even under that statute, a search of an individual not named in the warrant may not be upheld where there is no nexus between that individual and the suspected criminal activity, other than mere presence, unless independent probable cause existed for a warrantless search of the individual. See *State v. Anderson*, 195 Ga. App. 793 (395 SE2d 50) (1990); but compare *Travis v. State*, 192 Ga. App. 695 (385 SE2d 779) (1989). The same principle must apply where no warrant is obtained.

In the instant case, although the tip received by the arresting officers revealed the identity of two occupants traveling in the car, it did not identify Parker. The only connection shown between Parker and the two occupants identified by the informant was his mere presence in the vehicle. When Parker exited the vehicle as instructed by the officers, he was cooperative and made no gesture or movement that would indicate a threat or concealment of evidence. Cf. *Travis v. State*, supra. Although the arresting officers articulated no concern that Parker may have been armed, under these circumstances the officers may have been authorized to perform a pat-down of Parker's

outer clothing for weapons, but the officers exceeded that permissible intrusion and conducted a complete search of Parker, which was unjustified by Parker's mere presence in the vehicle or by any independent probable cause. *State v. Stephens,* supra; *State v. Anderson,* supra. For that reason, the trial court should have granted Parker's motion to suppress the evidence seized during that search.

I am authorized to state that Presiding Judge Beasley and Judge Cooper join in this dissent.

DECIDED DECEMBER 1, 1993.

*James M. Mullis,* for appellant.

*H. Lamar Cole, District Attorney, Charles M. Stines, Assistant District Attorney,* for appellee.